UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| North Star Home LLC,<br><br>        *Plaintiff*,<br><br>  v.<br><br>Wuxi Gougelila Electronic Commerce Co., Ltd.,<br><br>        *Defendant*. | **CASE NO.** 1:25-cv-11799<br><br>**Jury Demand** |

**COMPLAINT**

Plaintiff North Star Home LLC d/b/a NorthStarHome ('Plaintiff'), by and through its counsel, hereby files this Complaint against Defendant Wuxi Gougelila Electronic Commerce Co., Ltd. ("Defendant"), and alleges as follows:

**I. NATURE OF THE ACTION**

1. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the patent laws, 35 U.S.C. § 1 et seq. Plaintiff seeks a declaration that its Dog Playpen product (the "Subject Product") does not infringe any valid claim of U.S. Design Patent No. D1,085,555 (the "Patent-in-Suit").

**II. THE PARTIES**

2. Plaintiff North Star Home LLC d/b/a NorthStarHome ("North Star Home") is a limited liability company organized under the laws of the State of Illinois. Plaintiff maintains its principal office in Illinois. Plaintiff sells the Subject Product in the United States, including in this District, primarily via Amazon.com and other e-commerce channels.

1

3. Upon information and belief, Wuxi Gougelila Electronic Commerce Co., Ltd. is a Chinese entity and the owner (or otherwise holds enforcement rights) of the "Patent-in-Suit". A true and correct copy of the Patent-in-Suit is attached as **Ex. A**.

4. Plaintiff lacks access to Defendant's full chain of title and therefore pleads on information and belief that Defendant presently holds title to, or otherwise has standing to enforce, the Patent-in-Suit.

### III. JURISDICTION AND VENUE

5. This action arises under the patent laws, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. An actual case or controversy exists. Defendant has taken affirmative acts to enforce the Patent-in-Suit—including filing and prosecuting action against a same-tooling/specifications product, seeking and obtaining an ex parte TRO, inviting licensing, and refusing to provide a covenant not to sue—while Plaintiff continues present-tense sales of the Subject Product tied by manufacturer proof to the Texas product.

7. Personal jurisdiction is proper because Defendant has purposefully directed enforcement activities into the United States and this District by prosecuting a nationwide enforcement campaign against sellers of the same-tooling/specifications product, seeking and obtaining injunctive relief designed to restrain U.S. sales (including Illinois sales), and communicating license demands and a refusal to covenant not to sue to Plaintiff, knowing Plaintiff is in Illinois.

8. Defendant's directed enforcement communications into this District further support specific personal jurisdiction. See *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156–58 (Fed. Cir. 2021).

9. Defendant has not identified any state in which it is subject to general jurisdiction; accordingly, Fed. R. Civ. P. 4(k)(2) applies.

10. Venue in the Northern District of Illinois is proper under 28 U.S.C. § 1391(b)–(c) because a substantial part of the events giving rise to these claims occurred in this District, Plaintiff resides here, and the controversy materially affects Plaintiff's Illinois-based business operations and sales. For any foreign defendant, venue is also proper under § 1391(c)(3).

11. To the extent Defendant later seeks transfer under 28 U.S.C. § 1404(a), the operative facts and witnesses tied to Plaintiff's business in this District weigh against transfer.

### IV. FACTUAL BACKGROUND AND ARTICLE III CONTROVERSY

12. Plaintiff markets and sells the Subject Product nationwide, including to consumers in the Northern District of Illinois, and maintains ongoing inventory and purchase commitments. *See* **Ex. B**.

13. The Subject Product is manufactured to the same tooling/specifications as the products named in the Western District of Texas action referenced below (the "Texas Action"). This is shown by Plaintiff's purchase contract and the manufacturer's sworn declaration, together with contemporaneous manufacturer communications referencing both Plaintiff's purchase orders and the corresponding purchase orders of the Schedule A defendant LeetgooRet Home&Pet. *See* **Ex. C**; **Ex. D**; **Ex. E**.

14. On September 3, 2025, Defendant filed W.D. Tex. No. 3:25-cv-00392-KC (the "Texas Action") against at least one Amazon seller of the same product (i.e., a product made from the same tooling/specifications as the Subject Product), and the same day, moved for an ex parte Temporary Restraining Order. The Court granted the TRO on September 17, 2025, and later unsealed Schedule A on September 24, 2025. *See* **Ex. F**; **Ex. G**; **Ex. H**.

3

15. During this enforcement campaign, on September 10, 2025, Defendant's counsel emailed Plaintiff stating: *"If your client believes that it needs a license to my client's patent, I am happy to receive your licensing offer."* See **Ex. I**.

16. On September 22, 2025, after Plaintiff informed Defendant that the Subject Product is the same tooling/specifications product as that offered by Schedule A defendant LeetgooRet Home&Pet (supported by manufacturer records), Defendant declined to review Plaintiff's product, asserted that any controversy was "completely manufactured," and refused to provide a covenant not to sue. *Id.*

17. Defendant's acts—filing and prosecuting the Texas Action against the same tooling/specification product, obtaining an ex parte TRO, inviting licensing, and refusing to covenant—are affirmative enforcement acts that create an actual controversy under the Declaratory Judgment Act. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381–83 (Fed. Cir. 2007); *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 901–03 (Fed. Cir. 2008).

18. Plaintiff is presently selling the Subject Product in the United States and holds inventory and open purchase commitments. *See* **Ex. B**. Combined with the manufacturer-verified same-tooling nexus (including purchase orders by LeetgooRet Home&Pet), these present-tense facts satisfy the immediacy and reality requirements for Article III jurisdiction. See *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880–81 (Fed. Cir. 2008).

19. Plaintiff's ongoing sales, coupled with Defendant's licensing overtures and refusal to provide a covenant not to sue for the same make-and-model product, satisfy the 'adverse legal interests' and 'immediacy' requirements under *MedImmune*, *SanDisk*, and *Cat Tech*. Defendant's nationwide enforcement against identical, same-manufacturer products and pre-suit communications likewise render the dispute concrete rather than hypothetical, aligning with *Micron*'s rationale for declaratory jurisdiction in a convenient forum.

20. Under *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), the totality of the circumstances—Defendant's active Texas enforcement, the contemporaneous licensing invitation and refusal to covenant, Plaintiff's ongoing U.S. sales, and the manufacturer-verified identity of the same tooling/specifications—establishes a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant declaratory relief. *See also Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374–80 (Fed. Cir. 2011); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904–05 (Fed. Cir. 2014) (customer-directed assertions and materials that identify a third party's technology/product can create a controversy with that third party even when it is not a named defendant).

21. Plaintiff reserves the right to seek leave to amend to include additional declaratory claims, including invalidity, as discovery and prior-art investigations proceed.

## COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

22. Plaintiff realleges the foregoing to the extent necessary to show an actual controversy under Article III and the Declaratory Judgment Act.

23. The Patent-in-Suit is a design patent. Any infringement determination turns on the overall visual appearance of the claimed design as perceived by an ordinary observer, giving such attention as a purchaser usually gives, in view of the prior art. The ordinary-observer test governs, assessed in light of prior art. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678–79 (Fed. Cir. 2008) (en banc).

24. When properly viewed through the lens of the ordinary observer and the pertinent prior art, the overall visual impression of Plaintiff's Subject Product is not substantially the same as the claimed design of the Patent-in-Suit. The Subject Product presents a distinct overall appearance. *See* **Ex. J**.

25. To the extent any elements of the claimed design are functional rather than ornamental (e.g., gate/panel connectors, ground stakes, fasteners, stabilization features necessary for assembly, stability, or access), such functional aspects are not considered in the design-patent comparison. *See, e.g., Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010); *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1366–68 (Fed. Cir. 2006).

26. After discounting functionality, the remaining purely ornamental features further confirm no substantial similarity in overall visual impression.

27. In a crowded field, even small ornamental differences are dispositive to the ordinary observer, further narrowing the patent's effective scope. The field of the claimed design is crowded with prior art; in that context, any protectable scope is narrow, and minor ornamental differences are dispositive to the ordinary observer. Under the correct legal standard and in view of the prior art, the Subject Product does not present an overall visual impression that is substantially the same as the claimed design.

28. Accordingly, Plaintiff does not directly infringe any valid and enforceable claim of the Patent-in-Suit under 35 U.S.C. § 271. Plaintiff does not make, use, offer to sell, sell, or import any article whose overall visual impression is substantially the same as the claimed design to an ordinary observer in light of the prior art.

29. Plaintiff also does not indirectly infringe the Patent-in-Suit. Plaintiff has not and does not: (a) induce infringement under § 271(b); or (b) contributorily infringe under § 271(c), including by selling or offering to sell any component especially made or adapted for use in an infringement of the Patent-in-Suit that lacks substantial non-infringing uses.

30. Plaintiff is therefore entitled to a declaration under 28 U.S.C. § 2201 that the Subject Product does not infringe—directly or indirectly—any valid and enforceable claim of the Patent-in-Suit.

31. Pursuant to 28 U.S.C. § 2202, Plaintiff further seeks such other and further relief as the Court deems just and proper, including appropriate prospective equitable relief preventing Defendant from asserting or threatening to assert the Patent-in-Suit against the Subject Product absent further order of the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. A declaration under 28 U.S.C. § 2201 that Plaintiff's Subject Product does not infringe any valid claim of the Patent-in-Suit under the ordinary-observer test as informed by the prior art;

B. An award of costs, and in exceptional circumstances reasonable attorneys' fees under 35 U.S.C. § 285;

C. Appropriate prospective equitable relief under 28 U.S.C. § 2202 to prevent interference with Plaintiff's lawful sales based solely on the Patent-in-Suit, subject to the Court's equitable discretion;

D. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date: September 27, 2025

/s/ *Jie Li*
Jie Li, Esq.
GLACIER LAW LLP
251 S Lake Avenue, Suite 910
Pasadena, CA 91101
jie.li@glacier.law
626-750-0040

***Attorney for Plaintiff***